UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00750-RSE

**MELISSA KAY RICE**  PLAINTIFF

**VS.**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*[1]  DEFENDANT

**MEMORANDUM OPINION
AND ORDER**

The Commissioner of Social Security denied Melissa Kay Rice's ("Rice's") application for disability insurance and supplemental security income benefits. Rice seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Rice (DN 21) and the Commissioner (DN 25) have filed a Fact and Law Summary. The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 17).

I. Background

Melissa Rice is 49 years old, lives with her adult son, and has a high school education. (Tr. 32, 33, 80). Rice is presently unemployed, but has past relevant work experience as a front desk supervisor at Hilton Garden Inn from July 2004 to August 2005, a receptionist at Nemeth

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

Engineering from August 2005 to March 2006, and a table games dealer and floor supervisor at Belterra Casino Resort and Spa from April 2006 to December 2012. (Tr. 80, 216). On December 28, 2017, Rice protectively filed applications for disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3)("Act") and for supplemental security income ("SSI") benefits under Title XVI of the Act, alleging disability beginning on December 23, 2012. (Tr. Tr. 56, 68, 192, 196). Rice claims she could not perform work at substantial gainful levels due to a back injury, chronic pain, sacroiliac muscle spasms, fatigue, and neck pain. (*Id.*). Rice's applications were denied initially on March 1, 2018 (Tr. 80) and upon reconsideration on June 6, 2018 (Tr. 108). Upon Rice's request, a video hearing was conducted before Administrative Law Judge Karen Jackson ("ALJ Jackson") on August 27, 2019, with ALJ Jackson presiding from Lexington, Kentucky and Rice appearing in Frankfort, Kentucky. (Tr. 28–55). ALJ Jackson issued an unfavorable decision on October 24, 2019. (Tr. 9–26).

ALJ Jackson applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Rice has not engaged in substantial gainful activity since December 23, 2012. (Tr. 14). Second, Rice has the severe impairments of degenerative disc disease/osteomyelitis; status-post vertebrectomy/lumbar fusion; and osteoarthritis, right shoulder, status-post arthroscopy. (*Id.*). Rice also has the non-severe impairments of hypertension and major depressive disorder. (Tr. 14–15). Third, none of Rice's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 16). ALJ Jackson then determined Plaintiff has the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> She can lift or carry 20 pounds occasionally and 10 pounds frequently; stand or walk 4 out of 8 hours; sit for 6 out of 8 hours; occasionally climb ramps or stairs; frequently balance; occasionally stoop, crouch, crawl, and kneel; and occasionally reach overhead using the right upper extremity, but she can never climb ladders, ropes, or scaffolds and should avoid concentrated exposure to vibration and even moderate exposure to hazards such as unprotected heights or dangerous machinery.

(Tr. 16–17). Fourth, ALJ Jackson found that Rice can perform her past work as a reception clerk since it does not require performance of work-related activities precluded by her RFC. (Tr. 19). Fifth and finally, considering Rice's age, education, work experience, and RFC, ALJ Jackson determined that in addition to her past relevant work, there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 20).

Based on this evaluation, ALJ Jackson concluded that Rice was not disabled, as defined in the Social Security Act, from December 23, 2012 through the date of the decision. (Tr. 21). Rice sought review of ALJ Jackson's decision. (Tr. 189–91). The Appeals Council declined review on September 9, 2020. (Tr. 1–3). At that point, the denial became the final decision of the Commissioner, and Rice sought judicial review from this Court. (DN 1).

## II. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as

3

adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## III. Analysis

### A. Finding No. 5 – Residual Functional Capacity

Rice raises two challenges for review. Both pertain to ALJ Jackson's Finding No. 5, the residual functional capacity ("RFC") determination. (DN 21-1, at PageID # 1081). The RFC finding is the administrative law judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The administrative law judge bases her RFC finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This requires the administrative law judge to evaluate the persuasiveness of medical opinions in the record and assess a claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a). Rice claims ALJ Jackson failed to properly weigh the opinions of consultative examiner Dr. Peter Urda and treating physician Dr. James Murphy, which resulted in an RFC determination not supported by substantial evidence. (DN 21-1, at PageID # 1081–88).

#### 1. Consultative Opinion of Dr. Peter Urda

Plaintiff alleges ALJ Jackson did not evaluate the opinion of Dr. Peter Urda in accordance with the regulations because she neglected to articulate its persuasiveness or discuss the supportability and consistency factors in her decision. (DN 21-1, at PageID # 1082–83). The Commissioner responds that ALJ Jackson properly discounted portions of the opinion for lack of

4

clarity and failure to provide any specific limitations. (DN 25, at PageID # 1107). The Commissioner also points out that ALJ Jackson accepted those of Dr. Urda's findings that were consistent with and supported by objective medical evidence in the record. (*Id.* (citing Tr. 18)).

The new regulations for evaluating medical opinions are applicable here since Rice's claim was filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c (2017). Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). The administrative law judge need only explain how she considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. 20 C.F.R. § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2).

The Court will first note that Rice's argument as to ALJ Jackson's failure to articulate persuasiveness focuses on form over substance. ALJ Jackson considered Dr. Urda's opinion "helpful" in part but found that it failed to "clearly state the most [Rice] can do despite [her] impairments, stated in terms that are easily converted to vocational[] relevancy." (Tr. 19). Because of this, ALJ Jackson determined that the "probative value" of Dr. Urda's opinion was limited to some extent. (*Id.*). Although not interchangeable in every context, here, ALJ Jackson clearly intended for her use of "probative value" to indicate the persuasiveness of Dr. Urda's opinion. If ALJ Jackson erred in her use of "probative" rather than "persuasive," such an error was harmless.

*See Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021) ("In some instances, the failure to apply the rules properly can be harmless error, such as . . . . where the Commissioner "has met the goal of . . . the procedural safeguard of reasons.") (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 547) (6th Cir. 2004)). The articulation requirement of the regulations serves several purposes, including "maintaining public confidence in the basic fairness of the administration of the Social Security program to have disappointed claimants at least understand why the government has rejected [an] opinion[.]" *Smalley v. Comm'r of Soc. Sec.*, No. 20-1865, 2021 WL 4026783, at *4 (6th Cir. Sept. 3, 2021). Here, this goal is met, as ALJ Jackson clearly states her reasoning for rejecting portions of Dr. Urda's findings.

Dr. Urda's functional assessment provided that Rice was "capable of hearing, seeing, and speaking" as well as "handling objects." (Tr. 673). He opined that Rice was "capable of standing, sitting, and walking," but incapable of "performing safety-sensitive duties" or "operating machinery." (Tr. 673–74). Dr. Urda further noted that Rice was generally "limited in the ability to walk long distances or stand for long periods." (Tr. 673). Upon review, the undersigned agrees that portions of this assessment are too vague to meaningfully contribute to Rice's RFC determination, particularly his limitation on her ability to walk or stand, which does not estimate any specific length of time. ALJ Jackson properly rejected such findings. *See Quisenberry v. Comm'r of Soc. Sec.*, No. 17-2408, 2018 WL 6264566, at *7 (6th Cir. Nov. 29, 2018) (affirming ALJ's rejection of medical opinion, in part, because it was vague and did not propose any specific functional limitations); *Worden v. Comm'r of Soc. Sec.*, No. 2:13-CV-739, 2014 WL 3734458, at *7 (S.D. Ohio July 28, 2014) ("Significantly, as the ALJ observed, [the consultative examiner] did not set forth any specific limitations.").

ALJ Jackson also noted inconsistencies between Dr. Urda's findings and other evidence of

record, as well as internal inconsistencies between his underlying examination and his functional assessment. (Tr. 18, 19). Although she did not discuss these discrepancies directly when discounting Dr. Urda's opinion, it is clear she considered them earlier in her decision. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (recognizing that an ALJ's analysis may be found throughout her decision). As indicated by ALJ Jackson, Dr. Urda made various normal findings, including "normal station and gait," ability "to stand and squat, . . . tandem walk, and . . . to get on and off the exam table without assistance," which did not support his restrictive limitations. (Tr. 18). In addition, more detailed medical opinions in the record revealed that Rice could stand and/or walk for six hours of an eight-hour workday (Tr. 68–79) and that she should specifically avoid only "concentrated exposure to vibration and hazards" (Tr. 77). Considered alongside Dr. Urda's ambiguous limitation on "safety-sensitive duties" generally and walking or standing "for long periods," it was appropriate for ALJ Jackson to accept the more thorough findings, which rendered those of Dr. Urda's inconsistent and unsupported. (Tr. 18, 19).

Despite the foregoing, ALJ Jackson accepted portions of Dr. Urda's opinion as persuasive, including his determination that Rice had a "mild restriction in [her] lumbar range of motion and positive straight leg raises" and "moderate range of motion limitation in [her] right shoulder flexion and abduction" (Tr. 18). ALJ Jackson accepted these findings because they were consistent with and supported by the evidence of record, which revealed "mostly stable lumbar pain and range of motion." (*Id.*). After reviewing the opinion of Dr. Urda and the record evidence, the undersigned finds that substantial evidence supports ALJ Jackson's conclusion that his opinion was only somewhat persuasive[2] and finds no error.

2. Treating Opinion of Dr. James Murphy

---

[2] ALJ Jackson's conclusion was that the "probative value" of his opinion was "limited" in some ways, but as discussed above, it can be reasonably inferred that ALJ Jackson is opining on persuasiveness.

Rice also argues that ALJ Jackson erred in her consideration and discussion of Dr. James Murphy's treating physician opinion, criticizing ALJ Jackson's "conclusory statement" deeming it unsupported by the record evidence. (DN 21-1, at PageID # 1083, 1084). Rice suggests ALJ Jackson failed to "create a logical bridge" between the record evidence and her decision to allow for meaningful judicial review. (*Id.* at PageID # 1084). The Commissioner maintains that ALJ Jackson provided a sufficient explanation for why she found Dr. Murphy's opinion unpersuasive in accordance with the regulations. (DN 25, at PageID 1109–10).

In August 2019, Dr. Murphy opined that Rice had "severe round the clock pain that is exacerbated by activity, including work related activity." (Tr. 986). He noted that while seated, Rice could sit still for only fifteen minutes before needing to adjust her position, and that she would require the flexibility to shift at will from sitting to standing or walking. (Tr. 990). Similarly, Dr. Murphy observed that if standing, Rice would need to change positions or walk around every five minutes, for a period of five minutes. (*Id.*). Dr. Murphy provided that Rice would need to lie down "at unpredictable intervals" during an eight-hour workday and that this would likely occur every thirty minutes or less. (*Id.*). Ultimately, Dr. Murphy determined that Rice suffered "profound disability when it comes to sitting, standing, bending, twisting, walking, climbing and a number of other physical functions that would be required of most jobs." (Tr. 986).

ALJ Jackson considered Dr. Murphy's findings to be unsupported by the record evidence, which showed only "conservative treatment for [Rice's] pain and mostly stable lumbar pain and range of motion from the time after [Rice] healed from her 2011 surgery to mid-2019." (Tr. 19). As ALJ Jackson noted, prior to 2018, Rice was following a treatment plan and was "stable" on her medications. (Tr. 18). In February 2018, state agency consultants Dr. Alex Guerrero, Dr. Timothy Gregg, and Dr. J. DeBorja found overall that Rice had "a light exertional capacity," each opining

8

that while limited in some ways, she could "adjust to [] work." (Tr. 65, 77, 78, 91). Rice presented to Dr. Urda the same month, where he observed her to have a normal station and gait and only "mild restriction" in her lumbar range of motion. (Tr. 18). In May 2018, Dr. Murphy even noted that Rice had only "mild pain" in her right sacroiliac joint, an antalgic gait which caused her to favor her right leg, and "pain with palpation of [her] right S1 joint." (Tr. 18). ALJ Jackson found, therefore, that Dr. Murphy's determination of "profound disability" and his extreme restrictions were unsubstantiated. Substantial evidence supports this conclusion, as Dr. Murphy's findings are contradicted by much of the record evidence.

It is also worth noting that many of Dr. Murphy's proposed limitations come in the form of a "check-box analysis" with a few fill-in-the-blank questions. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (noting that reports, where the physician's only obligation is to check a box or fill in a blank, are generally weak evidence at best); *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016) (The Sixth Circuit has recognized that an ALJ can properly give check-box forms "little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence."). ALJ Jackson concluded that Dr. Murphy's assessment was "unpersuasive" in part because it relied on no "specific clinical or diagnostic proof" at all, but vaguely cited to "physical exam, MRI, old records." (Tr. 19). This was proper, since "[a] case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x. 515, 525 (6th Cir.2014). Rice has failed to demonstrate that ALJ Jackson erred with respect to her evaluation of Dr. Murphy's opinion and the Court, therefore, finds that her RFC determination is supported by substantial evidence.

## ORDER

For the above-stated reasons, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Regina S. Edwards, Magistrate Judge
United States District Court

Copies:    Counsel of Record

February 2, 2022